COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Willis
Argued at Alexandria, Virginia


JASPER LEE McBRIDE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3258-03-4          JUDGE JEAN HARRISON CLEMENTS
                                                      DECEMBER 28, 2004
JANET A. McBRIDE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gaylord L. Finch, Jr., Judge

Cory Frederick Goriup (Robert J. Surovell; Surovell Markle Isaacs &
Levy PLC, on briefs), for appellant.

David L. Duff (The Duff Law Firm, on brief), for appellee.


Jasper Lee McBride (husband) appeals from the final decree of divorce and equitable

distribution entered by the trial court on August 13, 2003.  Husband contends the trial court erred

(1) in improperly valuing and dividing certain marital accounts, (2) in granting Janet A. McBride

(wife) a portion of husband's pretrial military retirement pay, (3) in failing to value and divide

certain marital personal property and awarding certain separate personal property to wife, and (4) in

awarding wife a protective order.  For the reasons that follow, we affirm the judgment of the trial

court in part, reverse the judgment of the trial court in part, and remand the case for further

proceedings with respect to the equitable distribution award.

As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

The parties were married on May 16, 1981. During the marriage, husband served in the United States Army until 1994. Husband willfully deserted the marriage on February 12, 2001. No children were born of the marriage.

On December 14, 2001, wife filed a bill of complaint for divorce. After conducting a hearing on February 23, 2003, the commissioner in chancery recommended that wife be granted a divorce on the grounds of desertion.

On May 21, 2003, the trial court conducted an *ore tenus* hearing on the issue of equitable distribution and wife's request for a protective order. Following the hearing, the trial court took both matters under advisement. On July 3, 2003, the trial court announced its findings and conclusions concerning the issue of equitable distribution, found that wife was suffering from post-traumatic stress disorder "caused by years of abuse by . . . [h]usband," and adopted the findings of the commissioner in chancery as to the divorce.

On August 13, 2003, the trial court entered a final decree of divorce, awarding wife a divorce on the grounds of willful desertion, granting wife's request for a protective order against husband, and memorializing its equitable distribution rulings. The trial court subsequently denied husband's motion to reconsider, and this appeal followed.

## II. EQUITABLE DISTRIBUTION

The equitable distribution of the parties' property is governed by Code § 20-107.3. "In making an equitable distribution, the court must classify the property, assign a value, and then distribute the property to the parties, taking into consideration the factors listed in Code § 20-107.3(E)." Theismann v. Theismann, 22 Va. App. 557, 564, 471 S.E.2d 809, 812, aff'd en

banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Indeed,

> [u]nless it appears from the record that the [court] has abused [its] discretion, that [it] has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying [its] resolution of the conflict in the equities, the [court's] equitable distribution award will not be reversed on appeal.

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987). "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." Barker v. Barker, 27 Va. App. 519, 535, 500 S.E.2d 240, 248 (1998).

Moreover, "[w]e review the evidence in the light most favorable to wife, the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). "The trier of fact ascertains a witness'[s] credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness'[s] testimony." Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999).

## A. Distribution of Marital Accounts

Husband contends the trial court improperly valued and divided the funds in certain marital accounts. Specifically, he argues the trial court erred in assigning a valuation date other than the date of the equitable distribution hearing for the parties' Pentagon Federal Credit Union account, SunTrust checking account, and Bank of America checking account.[1] Husband further argues

---

[1] Husband also contends in his opening brief that the trial court erred in determining the cash surrender value of the parties' Armed Forces Benefit Association life insurance policy as of the date of separation. We need not consider that issue, however, because, as husband concedes in his reply brief, he did not dispute that determination below and, in fact, expressly

the trial court erred in twice dividing the $15,112.43 he transferred on the date of separation from the Bank of America checking account into the SunTrust checking account, thus, giving wife a double credit for those funds. Wife argues that, in light of the evidence presented, the trial court's division of the marital accounts was proper.

### 1. Alternate Valuation Date

Code § 20-107.3(A) provides, in pertinent part, as follows:

> The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less then 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

"We have stressed that the trial judge in evaluating marital property should select a valuation [date] 'that will provide the court with the most current and accurate information available which avoids inequitable results.'" Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 790 (1991) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)).

Furthermore, "waste" is defined as the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988). "Once the aggrieved spouse shows that marital funds were either

---

acknowledged at the equitable distribution hearing that wife was entitled to half of the policy's $7,200 cash value, which was determined as of the separation date. See Buchanan v. Commonwealth, 238 Va. 389, 400-01, 384 S.E.2d 757, 764 (1989) (holding that a party may not be heard to complain on appeal when the lower court took the very action requested or agreed to by that party); Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000) (holding that a party "will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with [the party's] representations"); Rule 5A:18. Similarly, husband will not be heard to complain, as he does in his reply brief, that the trial court's finding that the SunTrust account had a value of $29,796.12 on the date of separation was not supported by the evidence when husband himself testified, after consulting the pertinent account statement, that he had $29,796.12 in the SunTrust account as of February 12, 2001.

withdrawn or used after the breakdown [of the marriage], the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990). In other words,

> the burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose. If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result.

Id. at 587, 397 S.E.2d at 261.

In this case, wife filed a timely motion to use the date of separation as an alternate valuation date, claiming that, since the parties' separation, husband had "transferred, used and dissipated certain of the marital funds" in the parties' bank and investment accounts. The evidence presented at the equitable distribution hearing established that husband transferred $15,112.43 from the parties' Bank of America joint checking account into the SunTrust checking account on February 12, 2001, the day he willfully deserted the marriage, and transferred $67,500 from the Pentagon Federal Credit Union account into an American Express investment account on April 15, 2002. The SunTrust, Pentagon Federal Credit Union, and American Express accounts were all titled solely in husband's name and under his exclusive control. The evidence further established that marital funds remaining in the Pentagon Federal Credit Union account after the $67,500 withdrawal and marital funds in the SunTrust checking account were withdrawn or used after the parties' separation on February 12, 2001.

After receiving the parties' evidence at the equitable distribution hearing, the trial court found that husband failed to present sufficient evidence to prove that the funds he withdrew on or after the date of the parties' separation from the SunTrust and Bank of America checking accounts were used for living expenses or some other proper marital purpose. The trial court also found that husband failed to prove that he used the funds remaining in the Pentagon Federal

Credit Union account on April 15, 2002, following his transfer of $67,500 from that account into the American Express account, for a proper marital purpose.

Husband argues the trial court erred in making these findings. In support of his argument, he relies on Alphin v. Alphin, 15 Va. App. 395, 402 S.E.2d 572 (1992), and Amburn v. Amburn, 13 Va. App. 661, 414 S.E.2d 847 (1992).

In Alphin, we addressed the issue of the husband's alleged dissipation of the parties' marital accounts as follows:

> At trial, the husband provided the court with a detailed list of funds that the parties held on the date they separated and *a complete list of each expenditure that he made from these assets*. The trial judge examined the evidence and specifically found that the husband did not dissipate any marital asset. . . . The evidence proves that *all the expenditures* were for a proper purpose. The wife presented no evidence to the contrary. The trial judge reviewed the evidence and was satisfied with the husband's explanation of the expenditures. Accordingly, the trial judge's finding that the husband did not dissipate any marital asset is supported by credible evidence, and that ruling will not be disturbed.

15 Va. App. at 403, 402 S.E.2d at 576 (emphases added). We similarly upheld the court's decision in Amburn, observing that the wife "presented *a full accounting of her use of the [marital funds],* and the trial court reasonably found that she did not squander the money or use it for improper purposes." 13 Va. App. at 666, 414 S.E.2d at 850 (emphasis added).

Here, husband provided the trial court with neither a complete list of all of his expenditures from the subject accounts nor a full accounting of his use of the funds withdrawn from those accounts. Instead, he merely testified in general terms about transferring funds from the Pentagon Federal Credit Union and Bank of America accounts into the SunTrust account in order to pay

for his and wife's household expenses during his six-month period of unemployment.[2]  He also

offered into evidence a list of household expenses he paid in 2001 and 2002 on behalf of wife.  At

no point, though, did he testify that he actually paid for those specific household expenses using

funds from the SunTrust account.  Nor did he provide statements for the account or copies of his

cancelled checks for the relevant time period.  In the absence of such evidence, the record,

viewed in the light most favorable to wife, does not support the conclusion that those expenses

were paid for with funds from the subject accounts.  Likewise, husband's evidence fails to

establish that all of his post-separation expenditures from the subject accounts were used for a

proper marital purpose and is insufficient to calculate the amount of expenditures so used.  See

Artis v. Artis, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987) (holding that the court's

determinations for the purpose of equitable distribution "must go beyond mere guesswork").

Hence, we cannot say that the trial court's finding that husband failed to meet his burden

of proving the marital funds he withdrew from the subject accounts were spent for a proper

purpose is plainly wrong or without evidence to support it.  Accordingly, we hold that the trial

court did not abuse its discretion in valuing the SunTrust and Bank of America checking

accounts as of the date of separation and valuing the Pentagon Federal Credit Union account as

---

[2] With regard to the funds withdrawn from the Pentagon Federal Credit Union account after April 15, 2002, husband testified only as follows:

> During my period of unemployment, it was gradually drawn down by me in approximately $4,000 transfers from Pentagon Federal Credit Union over to Sun Trust where I wrote checks against it for expenses. . . .  I had my own household that I was operating plus providing—up until the Court directed that [wife] would pay everything except the mortgage for [the marital home], I was providing her 100 percent support, less food, for the dwellers of [the marital home].

With regard to the funds he withdrew from the Bank of America account on the separation date, husband testified only that he "moved $15,000 out of" the Bank of America account on February 12, 2001, and "moved it over to" the SunTrust account.

of April 15, 2002, the most recent dates for which the court had complete information, "so as to achieve an equitable result." Clements, 10 Va. App. at 587, 397 S.E.2d at 261.

## 2. Double Credit to Wife

Husband asserts on appeal that the trial court included the $15,000 he transferred from the Bank of America account into the SunTrust account on February 12, 2001, in its evaluation and division of both accounts. Thus, he argues, the trial court erred in dividing those marital funds twice and giving wife a double credit for those funds in its calculation of the monetary award.

Rule 5A:18 provides in pertinent part:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated *together with the grounds therefor* at the time of the ruling . . . . A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

(Emphasis added.)

Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 25 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc), aff'd, No. 040019 (Va. Sup. Ct. Order of 10/15/04). Thus, "though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." West Alexandria Properties, Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980). In short, we will not consider an

argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal"). The main purpose of this rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 739 (1991) (en banc); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991).

In this case, husband noted his objection to the final decree by referencing an "attached four-page statement of objections." In the attached statement of objections, husband argued with respect to the Bank of America and SunTrust accounts solely as follows:

> 4. Paragraph 5(f), captioned Sun Trust Checking account . . . , fails to give [husband] credit for funds, used from this account, to pay utilities used in the marital home by [wife], after the parties separated.

> 5. Paragraph 5(g), captioned Bank of America Checking account . . . , fails to give [husband] credit for funds used for living expense[s] after the loss of his employment. [Husband's] testimony was not rebutted and stands as the only evidence before the Court. The failure to give the evidence before the Court the weight it is entitled to is error.

Following entry of the decree, husband filed a motion to reconsider, in which he argued with respect to the Bank of America and SunTrust accounts that the trial court "erred in adopting a date of valuation different than the date of the final hearing." He made no other arguments regarding those accounts.

Thus, despite having had the opportunity to do so, husband did not alert the trial court to his claim that the court erred in awarding wife a double credit for the $15,000 husband transferred from the Bank of America account into the SunTrust account. Thus, the trial court was not timely

advised of the alleged error and had no opportunity to consider, address, or correct it. Moreover, our review of the record reveals no reason to invoke the "ends of justice" or "good cause" exceptions to Rule 5A:18. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448 ("We will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18."); M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule 5A:18 will not be invoked where appellant had the opportunity to raise the issue at trial but did not do so). We hold, therefore, that husband is barred by Rule 5A:18 from raising this claim for the first time on appeal.

### B. Distribution of Military Retirement Pay

The trial court awarded wife 50% of the marital share (59%) of husband's military retirement pay following his desertion of the parties' marriage on February 12, 2001. To that end, the court ordered that wife was to receive a direct monthly allotment of 29.5% of husband's military retirement pay received after May 21, 2003, the date of the equitable distribution hearing, and included in its monetary award to wife $20,926.50, or 29.5% of the $70,937 in retirement pay husband received between February 12, 2001, and May 21, 2003.

Husband does not challenge the trial court's numerical determinations or the award of the monthly allotment to wife on appeal. Rather, he challenges solely the court's award to wife of a part of the marital portion of the military retirement pay he received prior to the equitable distribution hearing. The thrust of his argument is that the trial court's "retroactive award" to wife of the military retirement pay he received before the equitable distribution hearing "constituted a double award to [wife]" because he deposited that pay into accounts that were divided by the trial court and used it to pay his and wife's other living expenses. Thus, he concludes, the trial court erred in evaluating and dividing the military retirement pay he received after the parties'

separation and before the equitable distribution hearing. Under the circumstances of this case, we disagree.

Although he cites no authority to support his position, husband is correct that an evaluation or division of marital property that results in an undeserved windfall to one of the parties is not equitable. See, e.g., Holden v. Holden, 35 Va. App. 315, 322-23, 544 S.E.2d 884, 887 (2001) (upholding the trial court's rejection of husband's distribution plan because it would unjustly result in a windfall to him). Indeed, in Clements, we held that, in determining the appropriate monetary award, the trial court did not err in refusing to award the wife a part of the pension payments received by the husband between the date of the parties' separation and the date of the final decree because such an award would have resulted in an unjust windfall to the wife. 10 Va. App. at 585, 397 S.E.2d at 260. Those payments, we observed, were presumed to have been "included in the *total* present value affixed to the pension" by the expert whose offered evaluation the trial court adopted. Id. (emphasis added).

Here, though, the trial court did not use the total present value of husband's military retirement pay as the basis for its distribution of that pay. Rather, as noted above, the court first awarded wife a direct monthly allotment of that portion of husband's future military retirement pay to which she was entitled and then calculated that portion to which she was entitled of the military retirement pay husband had already received between the parties' separation and the equitable distribution hearing. Thus, unlike in Clements, there was no overlap between the subjects of the two determinations.

Likewise, despite husband's claim to the contrary, the record, viewed in the light most favorable to wife, reveals no overlap between the trial court's evaluation of the marital portion of the subject pre-hearing military retirement pay received by husband and the court's evaluation of any of the other marital assets included in the monetary award or otherwise distributed by the

court. Wife presented evidence at the equitable distribution hearing establishing the amount of military retirement pay husband received after the parties' separation and before the equitable distribution hearing. Wife also testified that husband deposited his pre-hearing military retirement pay into his SunTrust checking account. Husband produced no evidence contradicting wife's evidence. As previously noted, the trial court properly evaluated the SunTrust checking account as of the date of separation. Thus, the trial court's evaluation of the SunTrust account did not include any of husband's military retirement pay deposited therein after the parties' separation. Moreover, as previously discussed, husband failed to show that the marital funds he withdrew from the SunTrust account after the parties' separation were used for a proper marital purpose.

Accordingly, husband did not meet his burden on appeal of showing that the trial court's distribution of husband's military retirement pay resulted in an unjust windfall to wife or that the trial court's evaluation and division of the military retirement pay was not otherwise just and fair. See Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988) ("The judgment of the trial court is presumed correct and he who asserts the contrary is required to overcome the presumption by record proof . . . ."). We hold, therefore, that the trial court did not abuse its discretion in evaluating and dividing the military retirement pay received by husband after the parties' separation and before the equitable distribution hearing and including wife's appropriate share of that pay in the monetary award.

### C. Division of Tangible Personal Property

#### 1. Property from the Marital Home

Husband contends the trial court erred in failing "to value and divide" the furniture, furnishings, and other items of tangible marital personal property owned by the parties.

Specifically, he argues that "the trial court did not value or consider jewelry and other expensive items that were in the possession of [wife]."

Initially, we note that husband's premise is erroneous, in part at least, because the trial court clearly *divided* the personal property owned by the parties. Indeed, the court's final decree provides for the division of the parties' personal property as follows:

4. Personal Property

(a) [Wife] is awarded the 2002 Lexus 300 automobile; and, [husband] is awarded the 1999 Cadillac Seville and the 1992 Oldsmobile 98 automobiles.

(b) Each party is hereby awarded sole ownership, free from any claim thereto by the other, of all furniture, furnishings and other items of personal property currently in his or her respective possession, subject to the ruling below in subparagraph (c).

(c) The diamond ring, previously owned by [wife's] deceased father, and currently in the possession of [husband], shall be returned to [wife] . . . .

The question remains, however, as to whether the trial court erred in failing to properly classify and value the subject personal property. We hold that the trial court did not so err.

Code § 20-107.3(A) provides, in pertinent part, that the trial court, "upon request of either party, shall determine the . . . ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." While Code § 20-107.3(A) "'mandates'" that the trial court evaluate and classify the parties' property, "consistent with established Virginia jurisprudence, the litigants have the burden to present evidence sufficient for the court to discharge its duty." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (quoting Hodges v. Hodges, 2 Va. App. 508, 516, 347 S.E.2d 134, 139 (1986)). "The burden is always on the parties to present sufficient evidence to provide the basis on which a

- 13 -

proper determination can be made . . . ." Hodges, 2 Va. App. at 517, 347 S.E.2d at 139. Hence, although the trial court may not "arbitrarily reject credible evidence of value" or "refuse or fail to give parties a reasonable opportunity to develop and present evidence of value," when "the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question." Bowers, 4 Va. App. at 617-18, 359 S.E.2d at 550-51.

Wife testified at the equitable distribution hearing that, while "some" of the furniture, furnishings and other items of personal property in her possession in the marital home were acquired during the marriage, "most" of the items remaining in the marital home after husband had come to the house "many times" and retrieved "a large share of . . . marital property" were "gifts from family" or things she had "brought into the marriage." She further testified that the value of the marital personal property husband removed from the marital home and had in his possession was "roughly equal" to the value of the marital personal property that remained in her possession in the marital home. On cross-examination, wife also testified that, while in Germany with husband, she used "the proceeds of [her] father's inheritance" to purchase two mink coats, a chandelier, three Chinese rugs, and "a lot of other things."

Conversely, husband presented no evidence at the equitable distribution hearing as to the identity or value of the items of marital personal property that were in his possession. Moreover, he offered no evidence to refute wife's claims at the equitable distribution hearing that the personal property she acquired in Germany was her separate property and that the value of the marital personal property in her possession was equal to the value of the marital personal property in husband's possession. Accordingly, the trial court had no evidentiary basis upon which to reach a different conclusion than it did.

- 14 -

Thus, having failed to provide sufficient evidence to permit the trial court to evaluate and distribute the subject property as he now claims the court should have, husband may not prevail on his claim.

## 2. Diamond Ring

Husband also contends the trial court erred in ordering him to give to wife the diamond ring gifted to him by wife's mother. We agree.

Code § 20-107.3(A)(1) provides, in pertinent part, that "[s]eparate property is . . . all property acquired during the marriage by . . . gift from a source other than the other party."

Here, it was uncontroverted that the subject diamond ring was gifted to husband alone by his mother-in-law during the marriage. Wife testified at the equitable distribution hearing and conceded at oral argument on appeal that her mother gave husband alone the ring, which had previously belonged to wife's father. Thus, the ring was husband's separate property and the trial court abused its discretion in awarding it to wife. See Code § 20-107.3(C) (providing that "the court shall have no authority to order the division or transfer of separate property").

## III. PROTECTIVE ORDER

Having found that wife suffered from post-traumatic stress disorder "caused by years of abuse by . . . [h]usband," the trial court ordered in the final decree that husband be enjoined from having any contact with wife, "committing any acts of . . . family abuse," and "performing any act that is reasonably calculated to harass or annoy [wife]."

Husband argues on appeal that the "inclusion of a protective order in the final decree is not supported by the evidence." Thus, he contends the trial court erred in awarding a protective order to wife. We disagree.

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom." Wright

- 15 -

v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002). "'Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (quoting Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

The trial court's "authority to issue the protective order derived from Code § . . . 16.1-279.1." Goodwin v. Commonwealth, 23 Va. App. 475, 480, 477 S.E.2d 781, 783 (1996). In pertinent part, Code § 16.1-279.1 provides that "[i]n cases of family abuse, the court may issue a protective order . . . to protect the health and safety of the petitioner." To that end, the court may "[p]rohibit[] such contacts by the respondent with the petitioner . . . as the court deems necessary for the health or safety of [the petitioner]." Code § 16.1-279.1. "Family abuse" is defined as "any act involving violence, force, or threat . . . which results in physical injury or places one in reasonable apprehension of serious bodily injury and which is committed by a person against such person's family or household member." Code § 16.1-228. A "family or household member" includes "the person's former spouse, whether or not he or she resides in the same home with the person." Id.

Here, viewed in the light most favorable to wife, the evidence presented at the equitable distribution hearing established that, following the parties' separation, wife was "stalked and harassed by . . . husband" and that wife "was afraid for [her] personal safety." In August 2001, wife sought mental health counseling from Lorraine Rauen, a licensed professional counselor and marriage and family therapist. Wife saw Rauen for counseling "several times a week." Rauen diagnosed wife as suffering from post-traumatic stress disorder. Rauen, who qualified as an expert witness on the subject of mental health counseling, testified that post-traumatic stress disorder results from "a person being confronted with events that are very frightening, that pose a serious threat, [a] life threatening threat to that individual." Rauen further testified that wife's

- 16 -

post-traumatic stress disorder directly resulted from the repeated abuse wife suffered during the marriage from husband. Rauen also testified that the self-inflicted knife wounds wife suffered shortly before the parties separated "were the result of the intense fear and agony and distress that she was experiencing as a result of the abuse" she endured at husband's hands during the marriage. Additionally, Rauen testified that she "strongly" believed it best for wife not to have any further contact with husband because such contact caused wife to suffer "psychological distress and [the] reaction or feeling that the events [of the abuse] will reoccur."

In light of this evidence, the trial court could reasonably find that husband committed an act of "family abuse" against wife and that a protective order prohibiting any future contact with wife by husband was necessary to protect wife's health and safety. Thus, the trial court had authority under Code § 16.1-279.1 to issue a protective order against husband and properly did so.

## IV. CONCLUSION

For these reasons, we reverse that portion of the trial court's judgment that awards the diamond ring to wife, we affirm the trial court's judgment in all other respects, and we remand this case to the trial court for entry of an order awarding the diamond ring to husband.

Affirmed in part, reversed in part, and remanded.